## CASS *v.* UNITED STATES

No. 73–604.   Argued April 16, 1974—Decided May 28, 1974*

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, MARSHALL, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. DOUGLAS, J., filed a dissenting statement, *post,* p. 84.

*Arthur B. Hanson* argued the cause for petitioner in No. 73–604.   With him on the briefs was *Charles A. Smith.   William A. Dougherty,* by appointment of the Court, 416 U. S. 934, argued the cause and filed briefs for petitioners in No. 73–5661.

*William L. Patton* argued the cause for respondents in both cases.   With him on the brief were *Solicitor General*

---

*Together with No. 73–5661, *Adams et al.* v. *Secretary of the Navy et al.,* also on certiorari to the same court.

*Bork, Acting Assistant Attorney General Jaffe, Robert E. Kopp,* and *Anthony J. Steinmeyer.†*

Mʀ. Jᴜꜱᴛɪᴄᴇ Wʜɪᴛᴇ delivered the opinion of the Court.

Congress has provided in 10 U. S. C. § 687 (a) [1] that an otherwise eligible member of a reserve component of the Armed Forces, who is involuntarily released from active duty, "and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service . . . by two months' basic pay of the grade in which he is serving at the time of his release." It is further provided that "[f]or the purposes of this subsection— . . . (2) a part of a year that is six

---

†*Kevin M. Forde* filed a brief for John N. O'Meara as *amicus curiae* urging reversal in both cases.

[1] In full, 10 U. S. C. § 687 (a) provides:

"§ 687. Non-Regulars: readjustment payment upon involuntary release from active duty.

"(a) Except for members covered by subsection (b), a member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service (other than in time of war or of national emergency declared by Congress after June 28, 1962), but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. However, a member who is released from active duty because his performance of duty has fallen below standards prescribed by the Secretary concerned, or because his retention on active duty is not clearly consistent with the interests of national security, is entitled to a readjustment payment computed on the basis of one-half of one month's basic pay of the grade in which the member is serving at the time of his release from active duty. A person covered by this subsection may not be paid more than

months or more is counted as a whole year, and a part of a year that is less than six months is disregarded . . . ." We must decide whether the "rounding" provision set forth in § 687 (a) (2) is to be applied in determining eligibility for readjustment pay, as well as in computing the amount of readjustment pay to which an eligible reservist is entitled, so that involuntarily released reservists who have completed four years and six months or more, but less than five years, of continuous active duty prior to their release are nonetheless entitled to a readjustment payment. The Court of Appeals held that the rounding clause applied only to computation of readjustment payments, 483 F. 2d 220 (CA9 1973), contrary to the earlier decision of the Court of Claims that the rounding provision is applicable in determining eligibility for, as well as computation of, readjustment payments under § 687. *Schmid* v. *United States,* 193 Ct. Cl. 780, 436 F. 2d 987, cert. denied, 404 U. S. 951 (1971). We granted certiorari to resolve the conflict, 414 U. S. 1128 (1974), and now affirm the judgment of the Court of Appeals.

Each petitioner had served continuously for more than four years and six months, but less than five years, when notified that he would be honorably but involuntarily released from active duty in the Reserves. In No. 73–604, petitioner Cass, a captain in the Army Reserve, was in fact released from active duty before completing five

two years' basic pay of the grade in which he is serving at the time of his release or $15,000, whichever amount is the lesser. For the purposes of this subsection—

"(1) a period of active duty is continuous if it is not interrupted by a break in service of more than 30 days;

"(2) a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded; and

"(3) a period for which the member concerned has received readjustment pay under another provision of law may not be included."

years of service, and when the Army denied his request for readjustment pay, he brought suit in the United States District Court for the District of Montana, which granted relief on the authority of the Court of Claims' decision in *Schmid, supra.* In No. 73–5661, petitioners Adams, Steneman, and Youngquist, captains in the Marine Corps Reserve, brought separate actions in the Central District of California, prior to their release, seeking a modification of their release orders to provide for readjustment pay. The District Court subsequently held that they were entitled to readjustment pay based on active service of more than four and one-half years.[2] The Government's appeals from the decisions of the two District Courts were consolidated, and the Court of Appeals reversed each, holding that the statute and its legislative history make clear that readjustment pay is not to be provided to reservists involuntarily released from active duty with less than five full years of continuous service.[3]

Petitioners assert to the contrary that the language of § 687 (a) unambiguously establishes that four and

[2] The District Court had earlier granted petitioners' motion for a preliminary injunction prohibiting their involuntary release without readjustment pay. As a result, these petitioners had each served more than five years on active duty by the time the decision awarding them readjustment benefits was rendered. In deciding they were entitled to readjustment pay, however, the District Court expressly disclaimed any reliance on the fact that they actually served more than five years, since they were permitted to do so only under the compulsion of the court's preliminary injunction. The injunction was dissolved as moot in the wake of the award of readjustment pay.

[3] The Court of Appeals also held that the injunction granted in favor of petitioners in No. 73–5661, see n. 2, *supra,* was improperly issued and could not be relied upon to support eligibility for readjustment benefits. 483 F. 2d 220, 222 (CA9 1973). That ruling is not challenged in this Court.

one-half years of continuous active service qualifies an involuntarily released reservist for readjustment benefits, that the legislative history of the rounding provision should therefore not be considered in resolving the issue, and that even if the legislative history is considered, it supports the construction urged by petitioners as much as that contended for by the Government. We are unpersuaded by these arguments, however.

The statute sets out both the eligibility requirements for entitlement to readjustment pay and the method of computing the amount of the applicable payment in the same sentence. Entitlement is based, in part, on the completion, immediately before the involuntary release of a reservist, of "at least five years of continuous active duty," and the payment is to be computed by multiplying the reservist's "years of active service" by two months' basic pay of the grade in which he is serving when released. Because the rounding provision expressly provides that it is to be applied for "purposes of this subsection," petitioners contend that the provision modifies the term "year" whenever that term appears in the subsection, i. e., to determine whether a reservist has completed five years of service to be eligible for readjustment benefits, as well as to determine the number of years of service to use as a multiplier in computing the amount of readjustment pay owed. This is so plainly true, petitioners contend, that resort to legislative history is unnecessary and improper.[4]

---

[4] Petitioners rely on cases suggesting that recourse to legislative materials is unwarranted when the meaning of statutory language is clear and unequivocal. E. g., United States v. Oregon, 366 U. S. 643, 648 (1961); Ex parte Collett, 337 U. S. 55, 61 (1949); Helvering v. City Bank Co., 296 U. S. 85, 89 (1935); United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 83 (1932). In the first two of these cases, though finding the language to be construed this

Our view is to the contrary. The rounding provision is arguably subject to the interpretation given it by petitioners, but did Congress intend that provision to override its explicit requirement of "at least" five years of service? We think the answer to that question is sufficiently doubtful to warrant our resort to extrinsic aids to determine the intent of Congress, which, of course, is the controlling consideration in resolving the issue before us.[5]  Moreover,

clear, the Court nonetheless did look at the legislative history of the statutory provisions to be interpreted.

[5] A majority of the Court of Claims in *Schmid* v. *United States,* 193 Ct. Cl. 780, 436 F. 2d 987 (1971), though they also examined the legislative history, found it clear from the language of § 687 (a) that the rounding provision should apply to both eligibility and computation determinations, whereas the Court of Appeals in these cases thought it clear that the minimum five-year eligibility clause is "not subject to the interpretation given it by the court in *Schmid.*" 483 F. 2d, at 222. Obviously there is room for reasonable dispute over the construction of § 687 (a) based on the statutory language alone. Petitioners tender other arguments, apart from that founded on the consistent use of the word "years," to demonstrate that, read in its statutory context, the rounding provision in § 687 (a) was plainly intended to establish the minimum qualifying term of service at four years, six months, but none of them overcomes the ambiguity created by the direct establishment of "at least five years" of service as a qualification for readjustment benefits. Thus, it is argued that § 687 (a) (3) excludes from the determination of both eligibility and the amount of benefits payable "a period for which the member concerned has received readjustment pay under another provision of law," and given the grammatical structure of § 687 (a), n. 1, *supra,* that the rounding rule in subsection (2) must be applied for the same purposes as the "prior period exclusion" rule of subsection (3). The Government asserts that the underlying premise that subsection (3) applies for both purposes is erroneous. As was the case with the rounding provision before codification, see text *infra,* the prior period exclusion was expressly to be applied only "[f]or the purposes of computing the amount of the readjustment payment." Act of June 28, 1962, 76 Stat. 120. Furthermore, the current Department of Defense Military Pay and Allowances Entitlements Manual § 40414 (b) (Jan. 1, 1967) still excludes such prior service only for

the Court has previously stated that "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which

computing the amount of readjustment pay due, not for determining entitlement. The Government suggests, therefore, that if §§ 687 (a) (2) and (3) are to be construed as applicable for the same purpose, that purpose is only for computation. Manifestly, the parties' dispute over the applicability of subsection (3) does not resolve the issue of when subsection (2) is to apply; it merely restates the problem.

Petitioners also rely on 10 U. S. C. § 6330, which expressly applies a like rounding rule both to determine eligibility for transfer to the Fleet Reserve and, thereby, for retainer pay, by enlisted members of the Navy and Marine Corps, and to compute the amount of retainer pay due. The pertinent portions of § 6330 provide as follows:

"§ 6330. Enlisted members: transfer to Fleet Reserve and Fleet Marine Corps Reserve; retainer pay.

. . . . .

"(b) An enlisted member of the Regular Navy or the Naval Reserve who has completed 20 or more years of active service in the armed forces may, at his request, be transferred to the Fleet Reserve. An enlisted member of the Regular Marine Corps or the Marine Corps Reserve who has completed 20 or more years of active service in the armed forces may, at his request, be transferred to the Fleet Marine Corps Reserve.

"(c) Each member who is transferred to the Fleet Reserve or the Fleet Marine Corps Reserve under this section is entitled when not on active duty, to·retainer pay at the rate of 2½ percent of the basic pay that he received at the time of transfer multiplied by the number of years of active service in the armed forces . . . .

"(d) For the purposes of subsections (b) and (c), a part of a year that is six months or more is counted as a whole year and a part of a year that is less than six months is disregarded. A completed minority enlistment is counted as four years of active service, and an enlistment terminated within three months before the end of the term of enlistment is counted as active service for the full term."

It is readily apparent that the rounding provision of § 687 (a) (2) contains an ambiguity not present in the more explicit language of

forbids its use, however clear the words may appear on 'superficial examination,' " *United States* v. *American Trucking Assns., Inc.,* 310 U. S. 534, 543–544 (1940); *Harrison* v. *Northern Trust Co.,* 317 U. S. 476, 479 (1943). Such aid is available in this case and we decline to ignore the clearly relevant history of § 687 (a).

Certain reservists involuntarily released from active duty are granted lump-sum readjustment pay to help them readjust to civilian life and to encourage qualified reservists to remain on active duty for extended periods. Readjustment pay was first provided by the Act of July 9, 1956, 70 Stat. 517, which conditioned entitlement on the completion immediately prior to release of "at least five years of continuous active duty." It also provided that "[f]or the purposes of computing the amount of readjustment payment (1) a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded . . . ." *Ibid.* As first introduced and passed by the House, however, the bill provided, as the codified version does now, that "[f]or the purposes of this subsection" the six-month rounding provision would apply. H. R. Rep. No. 1960, 84th Cong., 2d Sess., 9 (1956); 102 Cong. Rec. 10120 (June 12, 1956). It was nonetheless made clear by the debate in the House prior to passage that five years was to be the minimum eligibility requirement.[6]

---

§ 6330 (d). Nor does the particular rounding provision in § 6330 indicate any legislative custom in this context that should control the construction of § 687 (a). At most, § 6330 indicates that the construction of § 687 (a) proffered by petitioners *could* fit within the structure of Title 10, not that the section *must* be so construed.

[6] The sponsor of the legislation, Representative Brooks, engaged in the following dialogue and explanation:

"Mr. BROOKS of Louisiana. . . . We started with 5 years because we estimate that the average individual who stays 5 years in the service has in view making a career of that service. After he has

The Senate, focusing on a letter from the Comptroller General to the Chairman of the Armed Services Committee suggesting that the language be clarified to ensure that five years was to be the minimum period necessary to qualify for a readjustment payment, amended the bill to reflect this more clearly,[7] *id.,* at 11333–11334

---

gone a long way toward making a career of the service and when we take that opportunity away from him and turn him back to civilian life, we feel that there should be some sort of readjustment.

.         .         .         .         .

"Mr. GROSS. The minimum, then, is 5 years; is that correct?
"Mr. BROOKS of Louisiana. That is correct. The reason for the 5 years, of course, is that a 3-year enlistment would require a reenlistment, or . . . a man who is in for 4 years will have to reenlist for an extended period. After he completes the first enlistment I think he intends to stay in the service and this encourages him to stay in the service as long as the service needs him." 102 Cong. Rec. 10118–10119 (1956).

[7] The Comptroller General's letter was contained in the Senate Report and provides in pertinent part as follows:

"Although the language of subsection (a) of the bill seems to indicate that a minimum of 5 years' continuous active duty as an officer or warrant officer is necessary to qualify for a readjustment payment, the last sentence of that subsection appears to reduce the minimum qualifying service to 4 years and 6 months. Presumably the provision authorizing the counting of 6 months or more as a whole year was intended to apply only for the purpose of computing the amount of a lump-sum payment and not the quantum of qualifying service. If so, the language should be clarified, perhaps somewhat as follows:

" 'For the purpose of computing the amount of the readjustment payment a fractional part of a year amounting to 6 months [or 183 days] or more shall be counted as a whole year and a shorter period shall be disregarded.' " S. Rep. No. 2288, 84th Cong., 2d Sess., 11 (1956).

The Report itself explains that the amended provision in the bill was designed to limit the application of the rounding formula "to years used in the computation of readjustment pay and not for years to establish the 5-year minimum of substantially continuous active duty that is required to qualify for readjustment payments." *Id.,* at 2.

(June 29, 1956), and the House readily concurred the same day in the Senate amendments to the bill as the final language of the 1956 Act, *id.*, at 11503–11504.

The Act was amended in June 1962, primarily to raise the amount of readjustment benefits paid to involuntarily released reservists to equal the amount provided as severance pay to involuntarily released regular officers,[8] but it retained the explicit language specifying the use of the rounding provision for "purposes of computing the amount of the readjustment payment," 76 Stat. 120, and there was no discussion in the congressional reports[9] suggesting any modification of this language.   Less than three months later, however, the present language was adopted as part of a measure codifying "recent military laws."   Act of Sept. 7, 1962, 76 Stat. 506.   The committee reports accompanying the codification proposal make plain that no change in the eligibility requirements for readjustment pay was intended by the enacted change in phraseology.[10]   The Senate Judiciary Committee Report explained the purpose of the proposal as follows:

> "This bill, as amended, is not intended to make any substantive change in existing law.  Its purpose is to bring up to date title 10 of the United States Code, by incorporating the provisions of a number of public laws that were passed while the bill to enact title 10 into law was still pending in the Congress, and to transfer to title 10, provisions now in

---

[8] See H. R. Rep. No. 1007, 87th Cong., 1st Sess. (1961); S. Rep. No. 1096, 87th Cong., 1st Sess. (1961).

[9] N. 8, *supra*.

[10] The codification bill had been referred in both the House and the Senate to the Judiciary Committees, unlike the earlier substantive consideration of the bills establishing and amending the readjustment pay provisions by the Armed Services Committees of the respective chambers of Congress.

other parts of the code." S. Rep. No. 1876, 87th Cong., 2d Sess., 6 (1962).

The same limited purpose was expressed by the House Judiciary Committee, which further explained that "[s]ome changes in style and form have been made to conform the provisions to the style and form of title 10, but these changes do not affect the substance." H. R. Rep. No. 1401, 87th Cong., 2d Sess., 1 (1962).

These congressional comments, combined with the fact that no consideration of any change in eligibility standards appears in either the cited committee reports or in the proceedings leading to adoption of the codification bill by the House, 108 Cong. Rec. 4435–4441 (1962), and by the Senate, 108 Cong. Rec. 17088–17089 (1962), conclusively demonstrate that Congress did not reduce the minimum period of qualifying service for entitlement to readjustment benefits from five to four and one-half years when it substituted the words in the codified version of § 687 (a) for the unambiguous language of the prior substantive enactments. We are unpersuaded by petitioners' claim that the codified version is nevertheless to be accepted as correctly expressing the will of Congress and as a mere unexplained version of the language of prior law, see *Continental Casualty Co.* v. *United States,* 314 U. S. 527, 529–530 (1942); *United States* v. *Bowen,* 100 U. S. 508, 513 (1880). Here the meaning of the predecessor statute is clear and quite different from the meaning petitioners would ascribe to the codified law; and the revisers expressly stated that changes in language resulting from the codification were to have no substantive effect. *Fourco Glass Co.* v. *Transmirra Products Corp.,* 353 U. S. 222, 227–228 (1957); *United States* v. *Cook,* 384 U. S. 257, 260 (1966); *City of Greenwood* v. *Peacock,* 384 U. S. 808, 815–816 (1966).

The Court of Claims in the *Schmid* case, 193 Ct. Cl. 780, 436 F. 2d 987 (1971), thought that in codifying § 687 (a), Congress restored the original language of the 1956 House bill, which it knew had been interpreted by the Comptroller General as reducing the minimum eligibility requirement to four years, six months. *Id.,* at 787, 436 F. 2d, at 991. But the codification language was accompanied by no reference to the 1956 legislation or to the views then expressed by the Comptroller General.[11] What is more, it is plain that the language of the original 1956 bill was itself not intended to set the minimum eligibility period at less than five years.[12] The codification, if construed as petitioners would have it, would not represent a "return" to the original intent of Congress. It is also significant that there is no hint of any consideration of what such a change would cost or how it would affect the goals of the readjustment pay provisions, contrary to the careful attention these matters received when benefits under the readjustment pay statute were raised in 1962. As Judge Nichols commented in dissenting from the decision in *Schmid:* "In resolving ambiguity, we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process." *Id.,* at 789, 436 F. 2d, at 992. Finally, we cannot agree with the contention that a change in minimum eligibility from five to four and one-half years should not be considered a "substantive change" because once a reservist must re-enlist beyond the initial enlistment term of four years, the purpose of the readjustment benefit scheme as an inducement to extended service is satisfied. Not only is the selection of the particular minimum term of eligibility a peculiarly legislative task dependent upon substantive judgment, but the very fact that such a

---

[11] See n. 7, *supra.*

[12] See n. 6, *supra.*

change involves a substantially greater expenditure of funds places this sort of revision into the substantive realm.

We thus conclude that the rounding provision of § 687 (a)(2) is applicable only in the determination of how much readjustment pay an otherwise qualified reservist is authorized, and that such a reservist must serve a minimum of five full years of continuous active duty before he is involuntarily released in order to be eligible for readjustment benefits. The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS, agreeing with the Court of Claims in *Schmid* v. *United States,* 193 Ct. Cl. 780, 436 F. 2d 987, would reverse the judgment of the Court of Appeals.