UNITED STATES of America, Appellant,

v.

James Austin FRALEY, Sr., Appellee.

No. 75–1521.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1976.

Decided July 30, 1976.

Joshua R. Treem, Asst. U.S. Atty., Baltimore, Md. (Jervis S. Finney, U.S. Atty. and Leonard M. Linton, Jr., Asst. U.S. Atty., Baltimore, Md., on brief), for appellant.

Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

An indictment charging appellee Fraley, under 18 U.S.C. § 1510(a), with obstructing the communication of information of a suspected crime from a possible witness to a Special Agent of the United States Department of Agriculture was dismissed by the District Court on the ground that the statute did not fit Fraley's conduct. This conclusion, educed from the law's legislative history, is now appealed by the Government.

The facts, undisputed on the motion to dismiss, were these. On the evening of December 16, 1974, Special Agent Sheldon Goodrich, Office of Investigation, United

States Department of Agriculture, an investigator within the meaning of 18 U.S.C. § 1510(a), visited Mrs. Isabell Geesaman, an employee of the Fraley Meat Packing Company of Thurmont, Maryland, at her home in Catoctin Furnace, Maryland, in order to interview her concerning apprehended violations of Federal meat inspection laws by the Fraley company. Told of her rights, Mrs. Geesaman sought and obtained consent to a telephone call for advice. After a call, she made certain admissions concerning alleged violations. Questioning was interrupted by a loud banging on Mrs. Geesaman's back door, announcing the coming of the defendant-appellee James Austin Fraley, Sr., president of the Fraley company, and his son, the vice-president.

Fraley, Sr., said: "We are honest people trying to make a living, why don't you leave us alone." "You get out of here and get out of town right now. Don't even come through this town again. You have two minutes to get out of here or you ain't never going to get out." Agent Goodrich identified himself as a Federal officer and asked Fraley, Sr., if he were threatening him. Fraley, Sr., replied, "You're damned right I am. I have a shotgun out there and you better get out of here right now." In the face of cooler counsel by his son, Fraley, Sr., persisted: "I don't care who he is, if he does not get out of here now he is never going to get out." After Agent Goodrich left the house and walked to his car, Fraley, Sr., had the last word: "Your 120 seconds are almost up, you better get in that car and get out of here."

■ The indictment condenses these facts and relates them to 18 U.S.C. § 1510(a), which provides for the punishment of:

"(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a viola-

tion of any criminal statute of the United States by any person to a criminal investigator; . . . ."

The burden of this enactment at once emerging is to keep unobstructed the "communication of information . . . to a criminal investigator." Its primary subject of protection is the *transmission* of the words of a prospective informant or witness; it is the "giving" of information for which security is sought. Quite distant from its purpose is the concept of shielding informants or witnesses from harm, physical or otherwise—this objective is entrusted to the second paragraph of Section 1510(a).[1] Moreover, the communicatee's safety is not a regard of the statute save insofar as that person's ability to receive the information may be impaired by injury or restraint.

Notably, although the factual statement includes a recital of threats of physical attack upon the investigator, that is not the indictment offense. The core of the imputation of crime is the obstructing, delaying and preventing of the transmittal of information, the verbal assault upon the investigator simply describing the means of committing the crime.

■ Unlike the District Judge we find in the legislative history no ground for limiting the statute's scope merely to safeguarding informants and witnesses against intimidation or injury interfering with the furnishing of information to a Federal investigator. There is general language in the House Report No. 658, U.S. Code Cong. & Admin. News 1967, p. 1760, so summarizing the legislation when it was proposed, but this is fully countered in this introduction:

*"Purposes of the Bill*

The purpose of the proposed legislation is to amend chapter 73, title 18, United States Code (relating to obstruction of the administration of justice), by adding a new section prohibiting the obstruction of Federal criminal investigations."

---

1. "Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

"Shall be fined not more than $5,000, or imprisoned not more than five years, or both."

Consultation with the law's history is, it seems to us, a needless exploration, for the statute itself speaks with vigor and clarity to its end—the free channeling of information to Federal agents. Precedent generally vindicating our exposition is *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961) wherein it is observed:

> "Having concluded that the provisions of [the statute] are clear and unequivocal on their face, we find no need to resort to the legislative history of the Act."

It follows that the judgment of dismissal must be vacated and the case remanded for trial.

So Ordered.

WINTER, Circuit Judge (dissenting):

I disagree with the majority as to how the statute should be read, and I disagree that the legislative history should not be considered in determining the statute's meaning. As I read the statute, the district court was eminently correct in deciding that the indictment, as particularized, did not charge an offense in violation of 18 U.S.C. § 1510. The legislative history supports this conclusion. I would conclude that the district court's dismissal of the indictment should be affirmed.

For these reasons, I respectfully dissent.

### I.

The prosecution of the defendant arose out of a criminal investigation being conducted by a special agent of the Office of Investigation of the United States Department of Agriculture. While the agent was interviewing a potential witness at the witness' residence, the defendant, vice-president of the meatpacking firm that employed the witness, allegedly arrived and ordered the agent to leave the premises. The order was accompanied by implied threats of physical harm to the agent.

The district court dismissed the indictment on the ground that 18 U.S.C. § 1510 proscribes coercion of only a potential informer or witness, not a government investigator. The majority reverses, holding that the statute is concerned with preserving the flow of communication between potential informants or witnesses and government agents; any coercion that impedes the flow of communication is proscribed, regardless of whether it is directed at the speaker or the listener. I do not think the statute may be so read.

In turning to the statute, I am met with an absence of judicial gloss. No reported court opinion has confronted the issue of the scope of § 1510 since it was enacted in 1967. Act of Nov. 3, 1967, Pub.L. No. 90–123, 81 Stat. 362. I surmise that the absence of case law on this question is due to the fact that 18 U.S.C. § 111 provides a more direct prohibition against assaults on federal officers. Prosecution was brought under § 1510 in this case, however, because the agent did not come under the umbrella of § 111, which protects only the officials enumerated in 18 U.S.C. § 1114 (1970).

In its entirety, 18 U.S.C. § 1510 reads:

(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both.

(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

Boiled down to its essentials, the first paragraph of § 1510(a) is "[w]hoever . . endeavors . . . to obstruct . . . the communication of information . . .

by any person . . . to a criminal investigator" shall be imprisoned, etc. The prohibited forms of obstruction are "bribery, misrepresentation, intimidation, or force or threats"—acts manifestly directed to a person and not a thing. Since the protected communication is that made *by* any person to a criminal investigator, it seems to me that the communication can be obstructed only by an act directed to the putative informant. The further phrase "to a criminal investigator" characterizes the *type* of communication which is protected. I cannot read it to suggest that "communication" encompasses the reception of information by the investigator, so that the statute would proscribe a threat directed at him.

Nor do I agree, as the majority says, that the primary subject of protection of the first paragraph of § 1510(a) is the "transmission" of the words of a prospective informant and that only the second paragraph of § 1510(a) gives protection to the person. To me, both paragraphs give protection to the potential informant; the difference between them is that the first paragraph proscribes bribery, misrepresentation, intimidation, or force or threats to prevent information from being given, while the second paragraph renders criminal injury to person or property in retribution for information which has been given.

Thus, from the face of the statute, I would affirm the district court.

## II.

Even if the statute is clear on its face, the latest pronouncement of the Supreme Court makes it clear that the legislative history of § 1510 should be considered and, hence, that the district court was correct in doing so. In *Train v. Colorado Public Interest Research Group, Inc.*, —— U.S. ——, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976), the Court of Appeals had declined to consider the legislative history of the Federal Water Pollution Control Act (FWPCA) because it thought the Act so clear on its face that it supplied the answer to the question in dispute. In reversing the Court of Appeals, the Supreme Court said:

To the extent that the Court of Appeals excluded reference to the legislative history of the FWPCA in discerning its meaning, the Court was in error. As we have noted before, "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *United States v. American Trucking Assns.*, 310 U.S. 534, 543–544, [60 S.Ct. 1059, 1064, 84 L.Ed. 1345, 1351] (1940) (footnotes omitted). See *Cass v. United States*, 417 U.S. 72, 77–79, [94 S.Ct. 2167, 2170–2171, 40 L.Ed.2d 668, 673–674] (1974). See generally Murphy, Old Maxims Never Die: The "Plain-Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts, 75 Colum.L.Rev. 1299 (1975).

—— U.S. at ——, 96 S.Ct. at 1942.

The Court then examined the legislative history and relied on it to ascribe a meaning to FWPCA different from that assigned by the Court of Appeals.

On the authority of *Train*, I turn to the legislative history of § 1510. The House Report makes clear that the purpose of the 1967 bill was to close a specific loophole. *See* H.R.Rep. No. 658, 90th Cong., 1st Sess. (1967), 1 U.S.Code Cong. & Admin.News, p. 1760 (1967). Previous statutes concerning the obstruction of justice prohibited coercion of witnesses in judicial, legislative, and administrative proceedings, and strict judicial construction of the statutes prohibited their application to investigations prior to the initiation of formal proceedings. *E. g., United States v. Scoratow*, 137 F.Supp. 620 (W.D.Pa.1956). According to the House Report, § 1510 remedied "that deficiency by providing penalties for attempting to obstruct the communication to a Federal penal law [officer], thus extending to informants and potential witnesses the protections now afforded witnesses and jurors in judicial, administrative, and congressional proceedings." H.R.Rep. No. 658, 90th

Cong., 1st Sess. (1967), 1 U.S.Code Cong. & Admin.News, p. 1760 (1967). This specific purpose for the legislation was emphasized throughout the House Report by references to the problems posed for federal law enforcement because witnesses in organized crime investigations frequently were afraid to talk.

Nowhere in the House Report is there any reference to an intent to apply the section to proscribe coercion of government agents. Particularly in light of the very straightforward and complete analysis of the bill in the House Report, it seems unlikely that, without comment, Congress would have expanded and modified its existing scheme for preventing coercion of federal law enforcement officers.* In noting that § 1510 was not intended to be used by investigators to intimidate potential witnesses, the House Report stated: "The sole purpose of the act is to protect informants and witnesses against intimidation or injury by third parties with the purpose of preventing or discouraging the informants or witnesses from supplying or communicating information to the Federal investigator." *Id.* at 1762.

In the light of this history, I think that since the indictment in this case, as particularized, did not charge that the defendant endeavored to exert any influence upon the potential witness, it is self-evident that it was properly dismissed by the district court.

---

* In addition to the general prohibition in 18 U.S.C. § 111 (1970), there are other statutes which proscribe coercion of specific federal officials. *E.g.,* United States Cotton Standard Act, 7 U.S.C. § 60 (1970); Tobacco Inspection Act, 7 U.S.C. § 511i (1970); Animal Welfare Act, 7 U.S.C. § 2146 (1970); Poultry Products Inspection Act, 21 U.S.C. § 461(c) (1970); Meat Inspection Act, 21 U.S.C. § 675 (1970).