595 F.2d 797
 193 U.S.App.D.C. 412, 4 Media L. Rep. 2003
 COMMUNICATIONS SYSTEMS, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
COMMUNICATIONS SYSTEMS, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 Nos. 75-1992, 77-1804.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 15, 1978.
Decided Dec. 29, 1978.
 
 Benedict P. Cottone, Washington, D. C., for petitioner.
 C. Grey Pash, Jr., Counsel, F. C. C., Washington, D. C., with whom Robert R. Bruce, Gen. Counsel, Werner K. Hartenberger, Daniel M. Armstrong, Associate Gen. Counsel, Raymond L. Strassburger, Diana L. Evans, Counsel, F. C. C., Carl D. Lawson, Lee I. Weintraub, Barry Grossman and Edward E. Lawsen, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents.
 Ashton R. Hardy, Counsel, F. C. C., Washington, D. C., entered an appearance for respondent, F. C. C.
 Before BAZELON and MacKINNON, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* United States District Judge for the United States District Court for the District of Columbia.
 Opinion for the court filed by Circuit Judge MacKINNON.
 MacKINNON, Circuit Judge:
 
 
 1
 Communications Systems, Inc. (hereinafter "Communications") petitions for review of the refusal by the Federal Communications Commission (hereinafter "FCC") to convert KFMP (Communications' FM radio station at Cape Girardeau, Missouri) from a Class B to a Class C station.[1] Communications asserts three grounds for reversing the FCC orders: (1) the FCC violated the "Government in the Sunshine Act," 5 U.S.C. § 552b (1976), when it decided Communications' case without holding a public meeting; (2) Communications' rights under the Communications Act, 47 U.S.C. §§ 303(f), 316(a) (1970) and the Administrative Procedure Act, 5 U.S.C. § 553 (1976) were violated; and (3) the FCC orders are in conflict with prior agency standards and are not supported by record evidence.
 
 
 2
 We conclude that: (1) the Sunshine Act does not require the FCC to hold a meeting before issuing orders such as those involved here; (2) Communications was not entitled under the Communications and Administrative Procedure Acts to participate in the Dexter and Caruthersville rulemaking proceedings, for those proceedings did not alter KFMP's Class B status; and (3) the FCC's preference for the Malden station over upgrading KFMP was a reasonable exercise of agency discretion. As to petitioner's points (2) and (3), we find them to be insubstantial, fully answered by the opinion of the FCC and not to require further discussion. However, because of the scarcity of decisions involving the recently enacted Government in the Sunshine Act,[2] we consider the claim by Communications that the FCC did not comply with its provisions requiring open meetings.
 
 
 3
 Since the Sunshine Act was enacted on September 13, 1976 and did not take effect until 180 days thereafter on March 12, 1977, this issue is only relevant to the July 27, 1977 decision of the FCC in which it denied reconsideration of Communications' request. Communications contends that the Sunshine Act required the FCC deliberations on its request to be open to the public. Since the FCC did not hold open meetings on this matter, Communications maintains that there was a violation. The manner in which the Commission disposed of the instant agency business is described in its brief:
 
 
 4
 The FCC procedures by which this item was adopted did not involve any meeting of the Commissioners. See Fifteen-Forty Broadcasting Corp., supra, 41 RR2d at 1128. This decision was adopted by the notation process: The Commissioners each receive their own copies of every proposed agenda item. They each read over the items and fill in their individual "Notation Action List" (J.A. 225-39) either by requesting discussion on the item, At a meeting, or entering their votes approving or disapproving the items. When they have each finished going through the items, the Commissioners send their notation list to the Minutes Branch, where the results are tabulated. If any Commissioner has requested discussion on an item, it will then be placed on the meeting agenda. If not, then at the time all the lists are returned, and the vote counted, the item is considered to be approved (or disapproved). "The purpose of the Notation Process is to avoid scheduling meetings when there will be no discussion." Thus, this procedure permits quicker action on routine items, and it avoids the useless gesture of scheduling a public meeting which would only involve the casting of votes. (Footnotes omitted.)
 
 
 5
 FCC Br. at 26-27.
 
 
 6
 Communications' specific contention is that:
 
 
 7
 The Commission action of July 14, 1977 was, therefore, taken in violation of every requirement of the Sunshine Act. Under Section 552b(h)(2) of that Act, i. e. 5 USC § 552b(h)(2), this Court is authorized in this case to inquire into such violations "and afford such relief as it deems appropriate". And under (5) USC § 706(2)(D) this Court "shall (2) hold unlawful and set aside agency action, . . . found to be-. . . (D) without observance of procedure required by law".
 
 
 8
 Petitioner's Br. at 20-21.
 
 
 9
 The FCC has two responses to this argument. First, it says that since the argument was never presented to it, the issue is not properly before the court.[3] Communications persuasively responds that section h(2) of the Sunshine Act[4] allows "(a)ny Federal court otherwise authorized" to consider this issue. Second, the FCC asserts that the Sunshine Act only applies when meetings are actually held and that since the FCC did not meet to consider Communications' petition the statute is inapplicable. FCC Br. at 26-27. Communications counters that if the FCC were right then the purpose of the Act could be thwarted by agencies simply not having meetings.
 
 The statute provides:
 
 10
 Members shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every meeting of any agency shall be open to public observation.
 
 
 11
 5 U.S.C. § 552b(b). In the definitional section "member" and "meeting" are defined as follows:
 
 
 12
 the term "member" means an individual who belongs to a collegial body heading an agency.
 
 
 13
 5 U.S.C. § 552b(a)(3).
 
 
 14
 the term "meeting" means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business, but does not include deliberations required or permitted by subsection (d) or (e).
 
 
 15
 5 U.S.C. § 552b(a)(2).
 
 
 16
 The critical provision states that "(m)embers shall not Jointly conduct or dispose of agency business other than in accordance with this section (§ 552b)." If the FCC's action in this case is characterized as "jointly conduct(ing) or dispos(ing) of agency business," then it appears that open meetings were required. The focus of inquiry, therefore, must be on the meaning of the quoted language.
 
 
 17
 We find this language to be ambiguous since the Joint conduct or disposition of agency business could refer to face-to-face communications or conduct that resulted from more remote communications, such as by circulating written memoranda or voting sheets.
 
 The Supreme Court has stated:
 
 18
 "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' " United States v. American Trucking Assns., 310 U.S. 534, 543-544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, 1351 (1940) (footnotes omitted). See Cass v. United States, 417 U.S. 72, 77-79, 94 S.Ct. 2167, 2170-2171, 40 L.Ed.2d 668, 673-674 (1974). See generally Murphy, Old Maxims Never Die: The "Plain-Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts, 75 Col.R.Rev. 1299 (1975).
 
 
 19
 Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). Here the statute is clearly ambiguous, and Judge Robinson's admonition in United Shoe Workers of America v. Bedell, 165 U.S.App.D.C. 113, 118, 506 F.2d 174, 179 (1974) is applicable:
 
 
 20
 When the meaning of a word in a statute is not clear from the language of the statute itself, "there must be recourse to all the aids available in the process of construction, to history and analogy and practice as well as to the dictionary."
 
 
 21
 We therefore look to the legislative history of the Act.
 
 
 22
 The critical language is "joint conduct or disposition" and this was inserted into the bill following the recommendation by the House Judiciary Committee. 122 Cong.Rec. H7871. The amendment in the nature of a substitute recommended by the Judiciary Committee, which was offered by Congressman Flowers, provided in (a)(2) that "the term 'meeting' " means "an assembly of simultaneous communication concerning the Joint conduct or disposition of agency business . . . ." Congressman Flowers explained this provision as follows:
 
 
 23
 The committee . . . recommended an amendment to subsection (b) (of § 552b) to add language providing that agency members cannot jointly conduct or dispose of agency business other than as provided in new section 552b. The amended subsection would not preclude agencies from disposing of noncontroversial matters by written circulations.
 
 
 24
 122 Cong.Rec. H7871 (emphasis added). Thereafter, on motion of Congressman Flowers, the bill was amended to incorporate the "jointly conduct or dispose of agency business" language[5] that survived the conference committee to become part of the statute.[6]
 
 
 25
 Congressman Flowers' interpretation of the relevant language is consistent with that expressed in the Conference Committee Report:
 
 
 26
 The conference substitute provides that members shall not jointly conduct or dispose of agency business in a meeting other than in accordance with new section 552b. This prohibition does not prevent agency members from considering individually business that is circulated to them sequentially in writing.
 
 
 27
 H.R.Rep. No. 94-1441, S.Rep. No. 94-1178, 94th Cong., 2d Sess. 11 (1976) U.S.Code Cong. & Admin.News 1976, pp. 2183, 2247 (emphasis added).
 
 
 28
 It thus clearly appears from the legislative history that Congress intended to permit agency members to act on agency business that is circulated to them "sequentially in writing." The FCC was therefore not in violation of the Sunshine Act on July 27, 1977 when it used its notation procedure to dispose of Communications' petition.
 
 
 29
 This interpretation of the Sunshine Act is consistent with Congress' desire to open up the federal decision-making process "while protecting . . . the ability of the Government to carry out its responsibilities."[7] Notation voting enables Government agencies to expedite consideration of less controversial cases without formal meetings and following the other strictures of the Act. If all agency actions required meetings, then the entire administrative process would be slowed perhaps to a standstill. Certainly requiring an agency to meet and discuss every trivial item on its agenda would delay consideration of the more serious issues that require joint face-to-face deliberation. Clearly Congress did not intend such a result.[8] We accordingly affirm the action of the Commission.
 
 
 30
 Judgment accordingly.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 The following orders are challenged by Communications: (1) Cape Girardeau, et al., 51 FCC2d 492, 32 RR2d 1385 (1975); (2) Cape Girardeau, et al., 54 FCC2d 896, 34 RR2d 1150 (1975) (denying petition for reconsideration) (J.A. 129); and (3) Caruthersville, et al., No. 77-515, --- FCC2d ---, 41 RR2d 135 (July 27, 1977) (J.A. 240)
 This court has jurisdiction under § 402(a) of the Communications Act of 1934, 47 U.S.C. § 402(a) (1970) and 28 U.S.C. § 2342 (1976).
 
 
 [2]
 Government in the Sunshine Act, P.L. 94-409, 90 Stat. 1241 Et seq. (1976); 5 U.S.C. § 552b
 
 
 [3]
 Reliance is placed on 47 U.S.C. § 405; and Hansen v. FCC, 134 U.S.App.D.C. 100, 413 F.2d 374, 376 (1969)
 
 
 [4]
 5 U.S.C. § 552b(h)(2) provides:
 Any Federal court otherwise authorized by law to review agency action may, at the application of any person properly participating in the proceeding pursuant to other applicable law, inquire into violations by the agency of the requirements of this section and afford such relief as it deems appropriate. Nothing in this section authorizes any Federal court having jurisdiction solely on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose.
 
 
 [5]
 The entire sentence as proposed by Congressman Flowers and adopted by the House provided:
 Members as described in subsection (a)(2) shall not jointly conduct or dispose of agency business without complying with subsections (b) through (g).
 
 
 [122]
 Cong.Rec. H7884
 
 
 [6]
 122 Cong.Rec. 7884-7899
 
 
 [7]
 Government in the Sunshine Act, Pub.L. No. 94-409, § 2, 90 Stat. 1241 (1976)
 
 
 [8]
 Some commentators while acknowledging that "(t)he Conference Report makes clear that the prohibition does not prevent agency members from disposing of business by circulation of papers instead of meetings, I. e., By notation procedure," have suggested that "(t)o comply with the spirit of the Sunshine Act . . . agencies should refrain from excessive reliance on notation procedure." R. Berg & S. Klitzman, An Interpretative Guide to the Government in the Sunshine Act 13 (1978). We need not address this issue because nothing in the record indicates that this case deserved any greater FCC consideration than it received