Roger Lawrence **DWYER** 5707 Liberty Fairfield Road, Hamilton, Ohio 45011, Plaintiff,

v.

**UNITED STATES** of America (U.S. Army Finance Center) c/o United States Attorney General, Washington, D.C. 20013, Defendant.

**In the Matter of Roger Lawrence DWYER, Debtor.**

Bankruptcy No. 3–81–01397.
Adv. No. 3–81–0865.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 23, 1982.

Gene E. Schaefer, Middletown, Ohio, for debtor/plaintiff.

Vanessa D. Walton, Asst. U.S. Atty., Dayton, Ohio, for defendant.

Jack Pickrel, Dayton, Ohio, Trustee.

PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon Debtor's "Complaint to Compel Compliance of Automatic Stay and to Require the United States of America to Stop Withholding Debtor's Pension" filed on 15 December 1981. The Court considered the matter at a pretrial conference on 3 February 1982, at which time the parties agreed to submit the matter to the Court for decision based upon the record, inclusive of a joint Pretrial Order approved by the Court on 1 March 1982. The parties each subsequently submitted memoranda of law. The following decision is based upon the parties' memoranda, the Pretrial Order and the record.

## FINDINGS OF FACT

The pertinent facts are not disputed. The parties stipulated the following facts as "uncontroverted":

"On August 29, 1975, the Debtor was released from active duty, holding the rank as a Captain in the United States Army.

On August 30, 1975, the Debtor re-enlisted as a Staff Sargeant.

On September 24, 1975, the U.S. Army Financing and Accounting Center paid the Debtor a gross amount of $15,000 as readjustment pay, pursuant to 10 U.S.C. Section 687(a).

On January 31, 1981, the Debtor was released from active duty in the United States Army and placed on the retired list on February 1, 1981.

Upon the Debtor's retirement, he became eligible for retirement benefits. On or about February 1, 1981 and March 1, 1981, the Debtor received monthly retirement benefits.

Since April 1, 1981, the U.S. Army Accounting and Finance Center, pursuant to 10 U.S.C. Section 687(f), has not disbursed any further retirement benefits to the Debtor, and contends further that a total amount of $11,250 (75% of $15,000) should be deducted from the readjustment pay prior to the Debtor receiving any retired pay.

Beginning April 1, 1981, the U.S. Army has deducted the amount of $673.75 per month or a total of $6,063.75 as of December 1, 1981, from the Debtor's retired pay."

The Court notes that Debtor filed his Petition with this Court under 11 U.S.C. Chapter 7 on 13 May 1981.

The instant controversy centers around interpretation of 10 U.S.C. § 687(a) and (f) [1] which provide, in pertinent part:

(a) ... [A] member ... of the Army ... who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to readjustment pay computed [by the following formula].... A person covered by this subsection may not be paid more than two years' basic pay of the grade in which he is serving at the time of his release or $15,000, whichever amount is the lesser....

.  .  .  .  .

(f) If a member who received readjustment pay under this section after June 28, 1962, qualifies for retirement pay under any provision of this title or title 14 that authorizes his retirement upon completion of twenty years of active service, an amount equal to 75 percent of that payment, without interest, shall be deducted immediately from his retired pay.

Essentially, Debtor received a lump sum payment of $15,000.00 in 1975 as "readjustment pay." In 1981, Debtor then qualified for military retirement because of completion of twenty years of service. Debtor, however, has not received any of this retirement, and will not until 75% of the "readjustment pay" is credited to Debtor's retirement pay as it otherwise would have come due.

## STATEMENT OF ISSUES

The threshold issue before the Court is whether the payment by the United States

---

1. 10 U.S.C. § 687 was repealed effective 15 September 1981. Pub.L. 96–513, Title I, § 109(a), December 12, 1980, 94 Stat. 2870. The purpose of the repeal was "to revise and make uniform the provisions of law relating to appointment, promotion, separation, and retirement of regular commissioned officers of [the armed services]...." 1980 U.S.Code Cong. and Adm.News, pp. 6333–6334. For present law, see 10 U.S.C. § 1174. § 702 of Pub.L. 96–513, however, provides that, "... [T]he pro-

visions of this Act and the amendments made by this Act ... do not affect rights and duties that matured ... before the effective date of this Act...." See also commentary to 10 U.S.C. § 101 in the *United States Code Annotated.* This "savings provision" makes the former 10 U.S.C. § 687 applicable to measure pension rights, including Debtor's, which accrued prior to the effective date of the repealing statute.

of readjustment pay under 10 U.S.C. § 687(a) established a debtor-creditor relationship between the recipient and government, respectively, if the recipient subsequently qualified for retirement pay under titles 10 or 14 of the United States Code.

Debtor basically argues that the "setoff provision" within 10 U.S.C. § 687(f) is essentially a collection technique. In Debtor's own words, "Without the statute [the United States Army] would have to sue to get [its] money back." On this basis, Debtor argues that the instant postpetition setoff of 75% of previous adjustment pay against Debtor's presently accruing retirement pay constitutes collection of the debt violative of 11 U.S.C. § 362.

The United States responds that the adjustment under 10 U.S.C. § 687(f) of 75% of any previous readjustment pay is essentially a step in the computation of the amount of retirement pay a recipient will receive. The United States further argues that such calculation does not imply that the previous payment was in the nature of a debt, i.e. the United States would have no affirmative cause of action to collect any readjustment which had previously been paid.

### DECISION AND ORDER

It is the determination of the Court that payment of readjustment pay by the United States does not establish a debtor-creditor relationship between the United States and the recipient, and that therefore the postpetition setoff under 10 U.S.C. § 687(f) of 75% of prior readjustment pay from retirement pay under titles 10 or 14 of the United States Code is not violative of 11 U.S.C. § 362.

The United States does not possess an affirmative cause of action to recoup any readjustment pay properly paid under 10 U.S.C. § 687(a). See *Dilley v. Alexander,* 627 F.2d 407, 414–415 (D.C.Cir.1980), indicating a right to reimbursement of only

"erroneous" payments, and citing *Craft v. U.S.,* 589 F.2d 1057 (Ct.Cl.1977); also see *In re Howe,* 381 F.Supp. 1025 (N.D.Fla.1974), indicating that once properly due and payable, readjustment pay is "vested" in the recipient. If an individual who received readjustment pay subsequently is entitled to retirement pay under titles 10 or 14 of the United States Code, 75% of any amounts earlier paid as readjustment pay are essentially treated as prepaid retirement pay which is therefore deducted "off the top" from any amounts which otherwise would have been paid as retirement pay. Once 75% of the "prepayment" is credited against accruing retirement pay, routine retirement payments then commence. This treatment of adjustment pay as "prepayment" for computation purposes, however, does not vest the United States with a separate cause of action to recoup any amounts earlier paid, (e.g. no claim could be asserted against the probate estate of a recipient who had not "reimbursed" 75% of his readjustment pay through the setoff in 10 U.S.C. § 687(f). *Cass v. Montana,* 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974). Instead, readjustment pay was intended to provide moneys to aid recipients in the transition to civilian life upon involuntary release from service.[2]

For purposes of the bankruptcy estate, therefore, the United States does not possess a claim against the Debtor because no debt is owing by the Debtor to the United States. In this regard, life insurance policy loans are analogous and similarly are not "debt" as defined in 11 U.S.C. § 101(11). As stated in the legislative history:

> Section 101(11) defines "debt" to mean liability on a claim, as was contained in the House-passed version of H.R. 8200. The Senate amendment contained language indicating that "debt" does not include a policy loan made by a life insurance company to the debtor. That language is deleted in the House amendment

**2.** Note that one factor contributing to repeal of former 10 U.S.C. § 687 was that it "... was based upon the assumption that the armed forces would be returned to a small, all-regular force within ten years [because] ... [i]t was drafted at a time when lawmakers could not have foreseen the requirements for large, ready forces on a sustained basis." 1980 U.S.Code Cong. and Adm.News P. 6340.

as unnecessary since a life insurance company clearly has no right to have a policy loan repaid by the debtor, although such company does have a right of offset with respect to such policy loan. Clearly, then a "debt" does not include a policy loan made by a life insurance company. 124 Cong.Rec.H. 11,090 (Sept. 28, 1878); S. 17,406 (October 6, 1978), as cited in commentary to 11 U.S.C. § 101(11) in *1981 Collier Pamphlet Edition: Bankruptcy Code, Part 3.*

The Court perceives no reason to distinguish the setoff of the "prepayment" herein. See also, *In re Mullen,* 14 B.R. 38, 8 B.C.D. 163 (B.C.S.D. Ohio 1981), aff'd 14 B.R. 39, 8 B.C.D. 163 (S.D. Ohio 1981) refusing to apply contempt sanctions under a fairly identical fact situation.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtor's Complaint is hereby DENIED.