**PACIFIC LEGAL FOUNDATION,**
**Petitioner,**

**v.**

**The COUNCIL ON ENVIRONMENTAL**
**QUALITY, Respondent.**

**PACIFIC LEGAL FOUNDATION,**
**Appellant,**

**v.**

**The COUNCIL ON ENVIRONMENTAL**
**QUALITY et al., Appellees.**

**Nos. 79–1689, 79–1846.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 13, 1980.

Decided Oct. 27, 1980.

Sam Kazman, Washington, D. C., with whom Ronald A. Zumbrun, Sacramento, Cal. and Raymond M. Momboisse, Washington, D. C., were on brief, for petitioner-appellant.

Frank A. Rosenfeld, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Leonard Schaitman and Joseph B. Scott, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondent-appellee and appellees.

Lawton Chiles, Washington, D. C., filed an amicus curiae brief pro se.

Before McGOWAN and EDWARDS, Circuit Judges, and DANIEL M. FRIEDMAN,* Chief Judge, United States Court of Claims.

Opinion for the Court filed by Chief Judge FRIEDMAN, United States Court of Claims.

FRIEDMAN, Chief Judge:

These consolidated cases challenge regulations of the Council on Environmental Quality (Council) that make the Govern-

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

ment in the Sunshine Act (Sunshine Act), 5 U.S.C. § 552b, inapplicable to two types of Council action: (1) advising the President and (2) other actions on which the Council is not required to take a formal vote. No. 79–1689 is a petition to review the portion of the Council's Sunshine Act regulations that thus limit the applicability of the Act. No. 79–1846 is an appeal from a decision of the United States District Court for the District of Columbia dismissing a complaint charging that the Council's practices prior to adopting those regulations violated the Sunshine Act.[1]

We hold in No. 79–1689 that the Council's regulations are invalid insofar as they limit the applicability of the Sunshine Act in those two respects, and we therefore set aside those portions of the regulations. In light of that ruling, we find it unnecessary to decide the merits of No. 79–1846.

### I.

#### A. *The Government in the Sunshine Act*

The Sunshine Act, enacted in 1976, Pub. L.No. 94–409 (90 Stat. 1241), generally requires that meetings of government agencies be public. The Act reflects the policy, as stated in its Declaration of Policy, that "the public is entitled to the fullest practicable information regarding the decision-making processes of the Federal Government." Pub.L.No. 94–409, § 2. To accomplish this objective, the Act directs that "every portion of every meeting" of a multi-member agency must "be open to public observation." 5 U.S.C. § 552b(b). It also requires that in most cases the time, place, and subject of meetings be announced at least one week before the meeting. 5 U.S.C. § 552b(e)(1).

The Act defines "meeting" as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency busi-

ness ...." 5 U.S.C. § 552b(a)(2). It defines "agency" as any agency as defined in the Freedom of Information Act, 5 U.S.C. § 552(e), that is "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency." 5 U.S.C. § 552b(a)(1).

The Act contains ten exceptions to the open-meeting requirement of section 552b(b). 5 U.S.C. § 552b(c). Those exceptions, based upon the subject matter to be considered, permit but do not require an agency to close a meeting. Many of the exceptions closely parallel and are based upon the exceptions from disclosure in the Freedom of Information Act, 5 U.S.C. § 552(b). H.R.Rep.No.94–880, Part II, 94th Cong., 2d Sess. 15 (1976), *reprinted in* [1976] U.S.Code, Cong. & Ad.News pp. 2212, 2224. An agency is required to take a formal vote to close a meeting. 5 U.S.C. § 552b(d). If the meeting is closed, then the agency must make a recording, transcript, or minutes of the meeting from which the nonexempted portions of the meeting can be excerpted and made public. 5 U.S.C. § 552b(f).

Subsection (g) requires each agency subject to the Act to promulgate regulations to "implement" the foregoing requirements.

The Act gives this court jurisdiction to review those regulations, set aside those not in conformity with the Act, and require agencies to publish regulations in accord with the Act's requirements. 5 U.S.C. § 552b(g). Additionally, the district courts are given jurisdiction to enforce agency compliance with the Act. 5 U.S.C. § 552b(h)(1).

#### B. *The Council on Environmental Quality*

The Council, a unit within the Executive Office of the President, consists of three members appointed by the President with

---

1. The complaint also charged that the Council had conducted its business without a quorum, in violation of a "common law quorum rule."

Plaintiff, however, has not pursued that issue on the appeal, which is limited to the issues under the Sunshine Act.

Senate approval, one of whom he designates as chairman. 42 U.S.C. § 4342. The Council was created by Title II of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4342–47, enacted in 1969. Pursuant to the Environmental Quality Improvement Act, 42 U.S.C. §§ 4371–74, the Chairman also serves as Director of the Office of Environmental Quality.

NEPA directs the Council to assist and advise the President in preparing the President's annual Environmental Quality Report, to prepare and submit to the President studies regarding environmental conditions and trends, to review and appraise federal programs that affect the environment and to make recommendations to the President thereon, and to recommend national environmental policies to the President. NEPA also directs the Council generally to conduct environmental research and to monitor environmental trends. 42 U.S.C. § 4344.

Several executive orders have expanded the Council's functions by assigning it responsibilities for overseeing activities of federal agencies. Executive Order No. 11514 (March 5, 1970) directs the Council to coordinate federal programs related to environmental quality and to issue guidelines to federal agencies for the preparation of environmental impact statements. Section 3(f), (h), 3 C.F.R. 902, 904 (1966–1970 compilation). Executive Order No. 11991 (May 24, 1977) amplifies this authority by directing the Council to issue regulations to federal agencies for implementing all of the procedural provisions of NEPA. Section 1, 3 C.F.R. 123, 124 (1978). Under Executive Order No. 11735 (August 3, 1973), the Council publishes and periodically revises the national contingency plan for the removal of oil and hazardous substances from navigable waters. Section 4, 3 C.F.R. 793, 795 (1971–1975 compilation).

### C. *This Litigation and the Council's Regulations*

In January 1979, Pacific Legal Foundation (Pacific), a nonprofit, tax-exempt public interest organization, filed a suit in the district court against the Council, its members and its general counsel, seeking declaratory and injunctive relief. The complaint alleged that since June 8, 1977 the Council had not complied with the Sunshine Act and the Council's implementing regulations because it had acted in proceedings that constituted "meetings" under the Act but had neither made the meetings public nor closed the meetings in accordance with the statutory requirements for such action.

In June 1979, the district court granted the defendants' motion for summary judgment and dismissed the suit. Based upon the "sparse legislative history relevant to this issue," the court concluded that "the formulation and presentation of advice to the President on environmental matters, which is the CEQ's primary responsibility, is [not] 'official agency business' subject to the requirements of the Act." 13 E.R.C. 1273, 1276 (D.D.C.1979). The appeal in No. 79–1846 is from that dismissal of the complaint.

The day before the district court dismissed Pacific's suit, the Council adopted the amended Sunshine regulations that Pacific challenges in 79–1689.[2] As noted, the Act defines "meeting" as the "deliberations" of agency members that "determine or result in the joint conduct or disposition of official agency business." 5 U.S.C. § 552b(a)(2). The amended regulations define "official agency business" as "official collegial Council business," 40 C.F.R. § 1517.2(b), which is in turn defined as "any Council action which by statute, regulation, Executive Order, or internal Council procedures requires an affirmative vote of at least two Council members in order to be taken on behalf of the Council." 40 C.F.R. § 1517.2(c).

The regulations further provide that official agency business includes "the adoption of regulations" but does not include "advice to the President [or] actions taken by the

---

2. The Council promulgated its original Sunshine regulations in April 1977. *See* 42 Fed. Reg. 20818 (1977).

Chairman acting as Director of the Office of Environmental Quality under the Environmental Quality Improvement Act of 1970." *Id.* In addition, the regulations state that the term " '[m]eeting' shall not be construed to prevent Council members from considering Council business that is circulated to them individually in writing." 40 C.F.R. § 1517.2(b).

## II.

### No. 79–1689

A. The Council recognizes that it is an "agency" under the Act. Indeed, it could hardly do otherwise in view of the statutory definition of that term. The Act incorporates by reference the definition of "agency" in the Freedom of Information Act, 5 U.S.C. § 552(e). Under that definition, agency includes "any . . . establishment in the executive branch of the Government (including the Executive Office of the President)." The Council is a part of the Executive Office.

The situation before us here is similar to that in *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971). That was a Freedom of Information Act case in which we held that the Office of Science and Technology, which also was in the Executive Office of the President, was an "agency" under that Act. We noted that the Office of Science and Technology not only advised the President, but, like the Council, was also independently authorized to evaluate federal programs. The Conference Committee's Report on the 1974 Amendments to the Freedom of Information Act stated: "With respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David* . . . ." H.R.Rep.No.93–1380, S.Rep.No.93–1200 (conference reports), 93d Cong., 2d Sess. 14 (1974), *reprinted in* [1974] U.S.Code, Cong. & Ad.News pp. 6285, 6293; *see also* S.Rep.No.93–854, 93d Cong., 2d Sess. 33 (1974).

The Council's recognition that it is an agency under the Sunshine Act is further shown by the implementing regulations it adopted under that Act, which refer to the Act as the authority for the regulations. 40 C.F.R. Part 1517 (heading). The Council's preface to its original regulations stated that "the Sunshine Act . . . requires the Council to open its meetings to public observation unless the Council decides to close its meeting pursuant to a Sunshine Act exemption." 42 Fed.Reg. 20818 (1977). Those regulations virtually tracked the language of the original Sunshine Act, including the ten specific exemptions in subsection (c). 40 C.F.R. § 1517.4.

Despite its admission that it is an "agency," the Council relies on two items in the legislative history of the Sunshine Act which, if given the meaning and significance the Council ascribes to them, would show that the Council is not an agency under the Act. First, the Council relies, as did the district court in No. 79–1846, upon a statement of Senator Javits made during Senate debate on the bill. Senator Javits stated that the bill would not cover agencies whose essential function is to "make policy," which "would include the National Security Council and the Council of Economic Advisers." 121 Cong.Rec. 35324 col. 1 (1975). The Council claims that since the Council on Environmental Quality was modeled after the Council of Economic Advisers,[3] Senator Javits' interpretation also applies to it.

Senator Javits' statement, however, dealt with the Senate bill, which contained a different definition of agency than the Act finally enacted. The Senate bill used the definition of agency in the Administrative Procedure Act, 5 U.S.C. § 551(1), which is "each authority of the Government of the United States" (with exceptions not pertinent here). The Act, however, adopts the definition in the Freedom of Information Act, 5 U.S.C. § 552(e), which expressly in-

---

**3.** *See* H.R.Rep.No. 91–378, 91st Cong., 1st Sess. 9 (1969), *reprinted in* [1969] U.S.Code, Cong. & Ad.News, pp. 2751, 2759 (reporting NEPA).

cludes any "establishment in the Executive Office of the President."[4]

■ Senator Javits was not a sponsor of the bill, its floor manager, a member of the committee that considered it, or even a major supporter or opponent of the bill. The "remarks of the single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). Senator Javits made his statement while speaking in support of his proposed amendment, which would have excepted the Federal Reserve Board from the Act. His amendment was defeated. *See* 121 Cong.Rec. 35329 (1975).

Considering all the circumstances, Senator Javits' statement cannot be viewed as reflecting any indication of the views of Congress about the applicability of the Act to the Council on Environmental Quality.

The Council also notes that the Senate Committee Report on the bill contained a list of agencies the committee deemed the bill to cover, which did not include the Council. The Committee Report indicates, however, that the list was intended to be illustrative and advisory rather than definitive. The Committee stated that "[i]n the final analysis ... the wording [of the Act], rather than the list, must govern." S.Rep. No. 94–354, 94th Cong., 1st Sess. 15 (1975). Similarly, the House Committee Report, which reprinted the Senate Committee's list, cautioned that the list was intended only "to indicate the potential coverage of the bill." H.R.Rep.No. 94–880, Part II, 94th Cong., 2d Sess. 13 (1976), *reprinted in* [1976] U.S.Code, Cong. & Ad.News, pp. 2212, 2222. Indeed, the House Committee rejected a provision that would have definitively listed the agencies the Act covered. *See* H.R. Rep.No. 94–880, Part I, 94th Cong., 2d Sess. 35 (1976), *reprinted in* [1976] U.S.Code, Cong. & Ad.News, pp. 2183, 2208 (additional views of Rep. Horton).

■ Finally, the Council suggests that although it is an agency generally, it does not function in that capacity when it advises the President, so that in that role it is not subject to the Act. We rejected a similar argument implicitly in *Soucie, supra,* (the Office of Science and Technology both advises the President and performs other functions) and explicitly in *Ryan v. Department of Justice,* 199 U.S.App.D.C. ——, 617 F.2d 781 (1980).

*Ryan* was a Freedom of Information Act case in which disclosure was sought of responses by Senators to a questionnaire from the Attorney General regarding their procedures for selecting and recommending potential judicial nominees. The court refused to distinguish between the Attorney General in his capacity as an adviser to the President on judicial appointments, and in his capacity as the head of the Department of Justice, which concededly was an agency under the Freedom of Information Act. We stated that "depending on its nature and functions, a particular unit is either an agency or it is not. Once a unit is found to be an agency, this determination will not vary according to its specific function in each individual case." 199 U.S.App.D.C. at ——, 617 F.2d at 788.

B. The Council's main contention is that, even if it is an agency, the open-meeting requirements of the Act were not intended to apply to its primary responsibility of advising the President. Although it suggests that giving such advice is not part of its official business, the statutory description of its duties (*see supra,* pp. 1261–1262) demonstrates that the rendering of such advice is one of its principal responsibilities. If this is not part of the "official agency business" of the Council, it is difficult to see what actions could be so described.

As we have previously explained, the legislative history does not support the Council's view that the Act permits an exception

---

4. Indeed, the House Committee Report on this section of the Freedom of Information Act stated that "[t]he term 'establishment in the Executive Office of the President' ... means such functional entities as ... the Council of Economic Advisers." H.R.Rep.No. 93–876, 93d Cong., 2d Sess. 8 (1974), *reprinted in* [1974] U.S.Code, Cong. & Ad.News, pp. 6267, 6274.

to the open-meeting requirement for formulating and rendering advice to the President. As we now show, neither the language nor the structure of the Act justifies the exception.

The Act provides that "every portion of every meeting of an agency shall be open to public observation." 5 U.S.C. § 552b(b). This language is sweeping, unqualified, and mandatory. It does not authorize an agency to create exceptions for particular categories or kinds of agency action.

Congress recognized that there are agency actions for which general public scrutiny may not be appropriate. It noted the need for "protecting the rights of individuals and the ability of the Government to carry out its responsibilities." Pub.L.No. 94–409, § 2. The means Congress chose to accomplish this objective, however, was to permit an agency to close a particular meeting on an individual basis because of the adverse impact public proceedings would be likely to have upon the rights of individuals and the ability of the government to function properly. Congress limited these exceptions from the open-meeting requirement to "discussion of several narrowly defined areas." H.R.Rep.No. 94–880, Part I, 94th Cong., 2d Sess. 2 (1976), *reprinted in* [1976] U.S.Code, Cong. & Ad.News 2183, 2184.

As we have noted (*supra*, p. 1261), under the Act numerous requirements must be observed when a meeting is closed. Among others, "[a] separate vote of agency members shall be taken with respect to each agency meeting a portion or portions of which are proposed to be closed to the public . . . ." 5 U.S.C. § 552b(d)(1).

The congressional insistence that meetings may be closed only on an individual and particularized basis, coupled with the broad sweep of the general requirement of open meetings, is inconsistent with the Council's position that by regulation it may exempt from the open-meeting requirements an entire category of its business.

There may be instances in which a particular meeting at which the Council discusses and formulates advice to the President should be closed to the public. There is no occasion here, however, to consider the propriety or basis of such limited closing, since the Council has not attempted to do so. We hold only that insofar as the Council's regulations exempt from the open-meeting requirement meetings involving advice to the President, they are invalid because the Act does not authorize that action.

The Council contends, however, that if the Act is construed to cover its rendition of advice to the President, such application would violate the separation of powers and impair the President's authority under article II, § 2, cl. 1 of the Constitution to require the opinion of executive branch officers. It therefore urges us to construe the Act as inapplicable to that function in accordance with the settled rule that, where possible, a statute should be interpreted so as to avoid constitutional defects. *See, e. g., International Association of Machinists v. Street*, 367 U.S. 740, 749–50, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141 (1961).

For the reasons previously given, we do not think the Sunshine Act properly may be construed as inapplicable to the Council in its function of advising the President. Furthermore, as noted, the Council has not thus far sought to close particular meetings at which such advice is to be deliberated, but has instead sought totally to exempt such meetings from the Act. The constitutional issues thus are posed in an abstract context that is inappropriate for their adjudication. It may be that by closing certain meetings, the Council could avoid possible constitutional problems. We apply the settled rule that federal courts "will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Ashwander v. TVA*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ C. The Council's attempt by regulation to limit open meetings to those where an affirmative vote of two members is required by statute, regulation, executive order, or internal Council procedures, stands on no stronger foundation. Much of what we have said in discussing the Council's

attempt to create an exception for advice to the President is equally applicable here. In addition, the statutory definition of "meeting" is inconsistent with the Council's action.

The Act defines "meeting" as the deliberations of at least the number of agency members required for agency action (i. e., a quorum), where the deliberations "determine or result in the joint conduct or disposition of official agency business." There is nothing in this definition that justifies the gloss the Council has put upon it to restrict it to those meetings where an affirmative vote of two members is required to take action on behalf of the Council.

The statutory test is whether the deliberations "determine or result in the joint conduct or disposition of official agency business." If they have that effect, the deliberations constitute a "meeting," whether or not a formal vote is taken, and if it is taken, whether or not the vote is "required" for there to be agency action. By adding the required-vote standard to the statutory definition of "meeting," the Council improperly has limited the reach of the broad open-meeting mandate that Congress has specified.

■ The Council, of course, has broad discretion to determine the procedures by which it conducts its business. The Sunshine Act does not require an agency to hold meetings in order to function. *Cf. Communications Systems, Inc. v. FCC*, 193 U.S.App.D.C. 412, 595 F.2d 797 (1979), where we noted that Congress intended to permit agencies to consider and act on agency business by circulating written proposals for sequential approval by individual agency members without formal meetings. *See* S.Rep.No. 94–1178, H.R.Rep.No. 94–1441 (conference reports), 94th Cong., 2d Sess. 11 (1976), *reprinted in* [1976] U.S.Code, Cong. & Ad.News, pp. 2244, 2247. But where the deliberations and discussions among agency members in fact "determine or result in the joint conduct or disposition

of official agency business," they are meetings to which the Sunshine Act's open-meeting rule applies, no matter how the agency may characterize them for its own internal purposes.

### III.

#### No. 79–1846

At oral argument counsel for Pacific Legal Foundation stated that if it prevailed in No. 79–1689, it would receive all the practically significant relief it seeks by its appeal from the district court decision in No. 79–1846. In view of our decision in No. 79–1689, there is no occasion for us to decide No. 79–1846. Accordingly, we vacate the district court judgment in the latter case.

### CONCLUSION

In No. 79–1689, the regulations of the Council on Environmental Quality are set aside to the extent that they (1) exclude from the definition of "official agency business" the formulation or rendering of advice to the President, and (2) limit "official agency action" to Council action that by statute; regulation, executive order, or internal Council procedures requires an affirmative vote of at least two Council members in order to be taken on behalf of the Council. In No. 79–1846 the judgment of the district court is vacated, and the case is remanded to the court with instructions to dismiss the complaint.

*So ordered.* .